IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:10-CV-115-FL

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )     ORDER<br>)<br>) |
| INTERCOASTAL DIVING, INC., | )<br>) |
| Defendant. | )<br>) |

This matter is before the court on motions of Intercoastal Diving, Inc. ("defendant") for partial summary judgment (DE # 20) and of National Union Fire Company of Pittsburgh, PA ("plaintiff") for summary judgment (DE # 36). These motions, now fully briefed, are ripe for adjudication. Also before the court are plaintiff's motion to supplement or amend its answer to defendant's counterclaim (DE # 45) and defendant's motion to supplement or amend its counterclaim (DE # 47). These motions, too, are ripe for adjudication. For reasons set forth more particularly below, plaintiff's motion to supplement or amend its answer to defendant's counterclaim is GRANTED, defendant's motion to supplement or amend its counterclaim is GRANTED, and the parties' motions for summary judgment (DE ## 20, 36) are DENIED as untimely.

### STATEMENT OF THE CASE

Plaintiff, an insurance company incorporated in Pennsylvania, filed complaint, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, seeking declaratory judgment that it has

no duty to indemnify or defend the insured, defendant, in a state lawsuit filed against the latter. Defendant filed answer on August 17, 2010 and raised therein a counterclaim, asking the court to declare that plaintiff has a duty to defend and indemnify defendant in the underlying state lawsuit. On August 26, 2010, plaintiff filed answer to the counterclaim, and the court entered scheduling order on October 28, 2010.

On March 22, 2011, plaintiff filed motion for summary judgment, defendant motion for partial summary judgment. The parties each filed response on April 12, 2011, and only plaintiff filed reply. Then, on August 19, 2011, defendant filed a memorandum of subsequently decided authority as well as two affidavits. Soon thereafter, plaintiff filed motion to supplement or amend its answer to defendant's counterclaim. Plaintiff would seek to add defenses to matters raised in defendant's affidavits. Similarly, defendant filed on October 18, 2011, motion to supplement or amend its counterclaim in order to plead a claim for money damages against plaintiff arising out of plaintiff's refusal to defend the underlying state lawsuit. Finally, on November 2, 2011, this case was reassigned to the undersigned.

## STATEMENT OF THE UNDISPUTED FACTS

Inlet Point Harbor ("Inlet Point") is a residential planned community in New Hanover County, North Carolina, near the Atlantic Intracoastal Waterway and Masonboro Sound. Inlet Point has condominiums, common areas, a marina, and boat slips. The community's homeowners association, Inlet Point Harbor Owners Association, Inc. ("IPHOA"), controls the condominiums and common areas, while the marina and boat slips are controlled by the Inlet Point Harbor Boatowners Association, Inc. ("IPBOA").

On or before 2005, Inlet Point began considering construction necessary to improve the

2

existing bulkhead at Inlet Point Harbor and entered into an agreement with Gary Greene Engineers ("Greene") to analyze the existing bulkhead and prepare a plan to construct its replacement. Defendant Intercoastal Diving, Inc., a general contractor, submitted a bid to construct the new bulkhead on January 26, 2006, which bid was accepted on May 8, 2006.

On July 2, 2007, defendant informed that it had completed its work on the bulkhead. Thereafter, Gary Greene inspected and approved the work with the exception of three "punch list" items, which defendant completed by the close of 2007. Defendant was paid $1,935,750.00 for its work.

In or around February, 2008, the bulkhead suffered a failure. On April 7, 2008, Al Best, president of the IPHOA and IPBOA, e-mailed Gary Greene and Stan Rudd, defendant's president, and informed of two more areas where the bulkhead had begun to bulge. Mr. Best demanded that Greene and defendant work together to repair the bulkhead. In response, on or about May 27, 2009, Greene prepared his design for the bulkhead repair, and defendant made the repairs. However, on or about September 21, 2009, two additional areas of the bulkhead began to fail.

On February 17, 2010, IPHOA and IPBOA filed complaint in New Hanover Superior Court, with case number 10 CVS 743, styled <u>Inlet Point Harbor Boat Owner's Association, Inc. and Inlet Point Harbor Owner's Association, Inc. v. Gary Greene, P.E., d/b/a Gary Greene Engineers, Intercoastal Diving, Inc. and Liberty Mutual Insurance Company</u> (the "underlying complaint"). Plaintiffs in the underlying complaint assert against defendant Intercoastal Diving claims of breach of contract, breach of implied warranties, and breach of performance bond.

On March 17, 2010, defendant made a formal demand on plaintiff to defend and indemnify it as to the underlying complaint. Plaintiff and its predecessor, American Home Assurance

3

Company, had issued defendant a series of primary Commercial Marine Liability ("CML") policies, each with a corresponding Excess Liability policy, for the following terms:

1. May 17, 2005 to May 17, 2006, CML Policy No. B3045 and corresponding Excess Policy No. B3046;

2. May 17, 2006 to May 17, 2007, CML Policy No. B3045 and corresponding Excess Policy No. B3046;

3. May 17, 2007 to May 17, 2008, CML Policy No. 45089 and corresponding Excess Policy No. 45090;

4. May 17, 2007 to May 17, 2008, CML Policy No. 45089 and corresponding Excess Policy No. 45090; and

5. May 17, 2009 to May 17, 2010, CML Policy No. 90835 and corresponding Excess Policy No. 09386.[1]

Teravainen Aff. ¶ 2.

Plaintiff, through letter from counsel dated June 8, 2010, denied defendant's demand for defense and indemnity.

## DISCUSSION

A.  Standard of Review

1.  Summary Judgment

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the

---

[1] This policy information was taken directly from the Affidavit of Thomas Teravainen. The court notes that the affidavit does not appear to provide policy information for the period May 17, 2008 through May 17, 2009, but rather seems to duplicate the information for the period May 17, 2007 to May 17, 2008.

4

nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

    2.    Motions to Supplement Pleadings Pursuant to Rule 15(d)

Both parties filed motions to "supplement / amend" pleadings. Plaintiff cites Federal Rule of Civil Procedure 15(d), and defendant cites both Rules 15(a) and 15(d). Because each party seeks to supplement a pleading in response to a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented," Fed. R. Civ. P. 15(d), the motions are properly evaluated under Rule 15(d), rather than Rule 15(a). This distinction, however, is inconsequential, where the same standard applies to a motion brought under Rule 15(d) as to a motion brought under Rule 15(a). Franks v. Ross, 313 F.3d 184, 198 n. 15 (4th Cir. 2002). "In either situation, leave should be freely granted, and should be denied only where good reason exists, such as prejudice to the [opposing party]." Id. (internal punctuation omitted) (citing Walker v. United Parcel Serv., 240 F.3d 1268, 1278 (10th Cir. 2001).

B.    Analysis

    1.    An Insurer's Duty to Defend

Under North Carolina law, "The duty of an insurer to defend its insured is based upon the coverage contracted for in the insurance policy." Wm. C. Vick Const. Co. v. Pennsylvania Nat. Mut. Cas. Ins. Co., 52 F. Supp. 2d 569, 578 (E.D.N.C. 1999) aff'd sub nom. Wm. C. Vick Const. Co. v. Great Am. Ins. Co., 213 F.3d 634 (4th Cir. 2000). The party seeking benefits under an insurance contract bears the burden of showing coverage for its claim. Fortune Ins. Co. v. Owens, 351 N.C.

5

424, 430, 526 S.E.2d 463, 467 (2000). "Until a *prima facie* case of coverage is shown, the insurer has no burden to prove a policy exclusion." Id. An insurer's duty to defend the insured is broader than its duty to indemnify, where the former is ordinarily measured by the facts as alleged in the pleadings, the latter by facts ultimately determined at trial. Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986).

In order to determine whether the damage alleged in an underlying action is covered by the insurance policy, North Carolina applies the "comparison test": "the pleadings are read side-by-side with the policy to determine whether the events as alleged are covered or excluded." Id. at 693, 340 S.E.2d at 378. "When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." Id. at 691, 340 S.E.2d at 377. However, in evaluating the insurer's duty to defend, the court is not restricted to the underlying pleadings alone:

> [O]nce "the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy," the duty to defend is not dismissed simply because the facts alleged in the complaint appear to be outside coverage. Waste Mgmt., 315 N.C. at 691, 340 S.E.2d at 377-78. Thus, the insurer has a "duty to investigate and evaluate facts expressed or implied in the [ ] complaint as well as facts learned from the insured and from other sources." Id. at 691, 340 S.E.2d at 378; accord Duke Univ. v. St. Paul Fire and Marine Ins. Co., 96 N.C.App. 635, 638, 386 S.E.2d 762, 764 (1990). Any doubt as to coverage is resolved in favor of the insured. Waste Mgmt., 315 N.C. at 693, 340 S.E.2d at 378. If it is later determined that an insurer breached its duty to defend, "the insurer is estopped from denying coverage and is obligated to pay the amount of any reasonable settlement made in good faith by the insured of the action brought against him by the injured party." Pulte Home Corp. v. Am. S. Ins. Co., 185 N.C.App. 162, 165, 647 S.E.2d 614, 617 (2007) (citation omitted).

Breezewood Of Wilmington Condominiums Homeowners' Ass'n, Inc. v. Amerisure Mut. Ins. Co.,

6

335 F. App'x 268, 270-71 (4th Cir. 2009).[2]

  2. "Property Damage" and "Occurrence" as Defined by the Policies and Case Law

The policies issued to defendant clarify that the insurance applies to "bodily injury" and "property damage" only if:

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
> (2) The "bodily injury" or "property damage" occurs during the policy period.

Policy No. 45089, § 1, ¶ 1(b).[3]

The parties dispute whether there was any "property damage," and whether such damage, if present, was caused by an "occurrence." The policies define "occurrence" as follows:

> "Occurrence" means an *accident*, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> In the event of continuing or progressively deteriorating damage over any length of time such damage shall be deemed to be one occurrence, and shall be deemed to occur only when such damage first commences.

Policy No. 45089, § 8, ¶ 14 (emphasis added).

In turn, an "accident" is "an unforeseen event, occurring without the will or design of the person whose mere act causes it; an unexpected, unusual, or undesigned occurrence; the effect of an unknown cause, or, the cause being known, an unprecedented consequence of it; a casualty." Tayloe v. Hartford Acc. & Indem. Co., 257 N.C. 626, 627, 127 S.E.2d 238, 240 (1962). "Whether

---

[2] See also Waste Mgmt, 315 N.C. at 692, 340 S.E. 2d at 378 ("the modern acceptance of notice pleading and of the plasticity of pleadings in general imposes upon the insurer a duty to investigate and evaluate facts expressed or implied in the third-party complaint as well as facts learned from the insured and from other sources.").

[3] Plaintiff asserts that the policies in force at the time of the alleged "occurrence" were CML Policy No. 45089 and corresponding Excess Liability Policy No. 45090 (May 17, 2007 through May 18, 2008). Pl.'s Mem 4-5, n. 2. Further, plaintiff informs that the relevant provisions are "identical for each of the policies years." Id.

events are 'accidental' and constitute an 'occurrence' depends upon whether they were expected or intended from the point of view of the insured." Waste Mgmt., 315 N.C. at 696, 340 S.E.2d at 380.

"Property damage" is defined in the policy as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Policy No. 45089, § 8, ¶ 18.

"The term 'property damage' in an insurance policy has been interpreted to mean damage to property that was previously undamaged, and not the expense of repairing property or completing a project that was not done correctly or according to contract in the first instance." Prod. Syst., Inc. v. Amerisure Ins. Co., 167 N.C. App. 601, 606, 605 S.E.2d 663, 666 (2004) (citing Hobson Constr. Co. v. Great Am. Ins. Co., 71 N.C. App. 586, 590, 322 S.E.2d 632, 635 (1984)). According to the Fourth Circuit,

> The rationale underlying this view is that "the quality of the insured's work is a 'business risk' which is solely within his own control," and that "liability insurance generally does not provide coverage for claims arising out of the failure of the insured's product or work to meet the quality or specifications for which the insured may be liable as a matter of contract." [W. World Ins. Co., Inc. v. Carrington, 90 N.C. App. 520, 523, 369 S.E.2d 128, 130 (1988)]. Rather, such business risks are the purpose of performance bonds, not liability insurance policies. Id.

Breezewood Of Wilmington Condominiums Homeowners' Ass'n, Inc. v. Amerisure Mut. Ins. Co., 335 F. App'x 268, 271-72 (4th Cir. 2009). Thus, "damages based solely on shoddy workmanship (*i.e.*, damages seeking repair costs and/or completion costs) are not 'property damage.'" Wm. C. Vick, 52 F. Supp. 2d at 583.

However, state and federal courts applying North Carolina law have held that damage caused by the insured's defective work to property other than the insured's work product may constitute "property damage." See Builders Mut. Ins. Co. v. Mitchell, 709 S.E.2d 528, 532 (N.C. Ct. App. 2011). In Builders, for instance, the North Carolina Court of Appeals reviewed a case in which the insured, a construction company hired to repair damage to a house, was sued for faulty repair. Affidavits in the underlying lawsuit suggested that the insured's faulty work had caused damage to previously undamaged portions of the house. The Court of Appeals held that the insurer had a duty to defend where "there are allegations of damage to previously undamaged property that could constitute an 'accident' and thus an 'occurrence' under the policy.'" Id. at 535.

The Fourth Circuit reached a similar conclusion in Travelers Indem. Co. v. Miller Bldg. Corp., 97 F. App'x 431 (2004). There, the insured, a construction company hired to build a hotel in Wrightsville Beach, North Carolina, was sued by the hotel owner for damages arising from the insured's defective work. "The problems included an improperly installed post-tensioning cable system, which led to extensive cracking and buckling of the hotel's concrete framework; an improperly applied exterior wall finish, which allowed water to leak into the hotel, damaging walls and carpet in the guest rooms; and improperly installed windows and sliding glass doors, which also allowed water to leak in the guest rooms." Id. at 432. The insurer sought declaratory judgment that it had no obligation to defend the insured, arguing that the insured was responsible for the construction of the entire hotel and that claims for the cost of correcting the insured's defective work did not fall within the scope of the policy. Id. at 434-37. The Court held, however, that the underlying claims for damage to the carpeting, which carpeting was owner-furnished material and which the insured did not subjectively intend to damage, sought recovery for "property damage"

9

caused by an "occurrence," and therefore held that the insurer had a duty to defend. Id. at 437.[4]

Accordingly, damage to property other than the bulkhead caused by defendant's defective work could constitute "property damage" caused by an "occurrence."

3. Whether "Property Damage" Caused by an "Occurrence" has been Alleged

Pursuant to the "comparison test," the court must review the complaint in the underlying state action to determine the nature of the damage alleged. The plaintiffs in the underlying state action, IPHOA and IPBOA, allege that defendant's defective construction led to the following damages:

> the Bulkhead, as constructed, suffers from numerous and substantial defects rendering it unfit for its intended purpose; the Bulkhead, as constructed, is subject to future failures; Plaintiffs have incurred substantial additional costs from consultants which performed testing and inspections on the Bulkhead; and Plaintiffs will be enforced to incur substantial additional costs to correct and remedy Intercoastal Diving's defective and inadequate work.

Underlying Compl. ¶ 37. Mention is made here only of bulkhead defects and of the cost of repairing same.

Yet affidavits filed by defendant nearly four months after the close of briefing on the parties' cross-motions for summary judgment and eighteen months after initiation of the underlying lawsuit assert that property distinct from the bulkhead was damaged by defendant's allegedly defective work – namely, plumbing pipes and floating docks. In one affidavit, Al Best, President of IPHOA and IPBOA, states that a massive blowout of the bulkhead, occurring in July, 2010, resulted in damage to plumbing pipes that deliver water to Inlet Point's common docks. Mr. Best further states that the

---

[4] See also Wm. C. Vick, 52 F. Supp. 2d at 585-86 ("If, for example, Farm Bureau sued Vick Construction for damages caused to office furniture due to leaks in the newly constructed building addition, or if faulty construction caused the ceiling to collapse thereby causing injury to a person standing inside the new addition, such an event may very well constitute an 'accident' triggering coverage, though these issues are not before the court.").

damaged pipes were not the subject of defendant's bulkhead work and informs that Inlet Point seeks recovery in the underlying lawsuit for the costs spent in repairing the pipes. In a second affidavit, Michael Conrad, owner of Carolina Marine Construction, Inc., a corporation hired by IPHOA to repair the bulkhead, stated that the bulkhead failure caused damage to Inlet Point's floating dock, which was not a part of the bulkhead.

While such damage was not alleged in the underlying complaint, the Fourth Circuit has made clear that "the duty to defend is not dismissed simply because the facts alleged in the complaint appear to be outside coverage." Breezewood, 335 F. App'x at 270 (citing Waste Mgmt., 315 N.C. at 691, 340 S.E.2d at 377-78). Rather, "the insurer has a duty to investigate and evaluate facts expressed or implied in the complaint as well as facts learned from the insured and from other sources." Breezewood, 335 F. App'x at 270-71 (internal punctuation omitted).[5]

Where the affidavits filed August 19, 2011 raise factual issues not known to the parties during initial pleading or during summary judgment briefing, the undersigned finds good cause to grant plaintiff's motion to amend or supplement its answer to defendant's counterclaim. Similarly, the interests of justice support allowing defendant's motion to supplement or amend its counterclaim. As a result, where the pleadings are not finally framed, the court denies as untimely plaintiff's motion for summary judgment and defendant's motion for partial summary judgment.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to supplement its answer to defendant's counterclaim (DE # 45) is GRANTED. Defendant's motion to supplement its counterclaim (DE #

---

[5] See also Travelers, 97 F. App'x at 433 ("We are not, however, strictly limited to the allegations contained in the pleadings; the facts as developed during discovery are also relevant to the duty-to-defend inquiry.") (citing Duke Univ. v. St. Paul Fire & Marine Ins. Co., 96 N.C. App. 635, 386 S.E.2d 762, 764 (Ct. App. 1990).

47) also is GRANTED. The parties, *before* filing their supplemental pleadings, shall confer and prepare a supplement to their Rule 26(f) report. The parties shall include therein a proposed schedule for filing of defendant's supplement to its counterclaim, plaintiff's supplemental response to same, and a proposed schedule for filing of cross-motions for summary judgment. Said supplemental Rule 26(f) report shall be filed **within fourteen (14) days** of entry of this order.

Where the pleadings in this case are not yet framed, the court DENIES as untimely plaintiff's motion for summary judgment (DE # 36) and defendant's motion for partial summary judgment (DE # 20).

SO ORDERED, this the 1st day of June, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge